UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| CITY OF MORRISTOWN, TENNESSEE,<br><br>Plaintiff,<br><br>v.<br><br>AT&T CORP. and BELLSOUTH TELECOMMUNICATIONS, LLC d/b/a AT&T TENNESSEE and d/b/a AT&T SOUTHEAST,<br><br>Defendants. | ) | No. 2:16-cv-59 |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint [doc. 17] and Plaintiff's Response [doc. 18]. For the reasons herein, the Court will deny Defendants' motion.[1]

## I. BACKGROUND

Plaintiff City of Morristown, Tennessee ("City of Morristown"), alleges that it had a long-term contractual relationship for telephone services with Defendants that dates back to the 1970s and included the installation of multiple circuits. [Am. Compl., doc. 14, ¶¶ 5,

[1] In this motion, Defendants seek dismissal of the Amended Complaint [doc. 14], but beforehand, they filed a motion to dismiss the original Complaint [doc. 1-1]. Because an amended complaint replaces an original complaint, the Court will deny the first motion to dismiss [doc. 12] as moot. *See, e.g.*, *Ky. Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) ("Plaintiff's amended complaint supercedes the original complaint, thus making the motion to dismiss the original complaint moot.") (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).

13]. The City of Morristown claims that, between 1992 and 2004, it requested the cancelation of eight circuits, which have since been "removed from service" and inactive. [*Id.* ¶¶ 9, 11, 13, 15, 17, 19, 21, 23]. To investigate Defendants' billing practices, the City of Morristown alleges that in 2012 it hired an independent consulting firm and learned that Defendants had overcharged it by hundreds of thousands of dollars over several years. [*Id.* ¶¶ 7, 25]. The City of Morristown also alleges that "[t]his consulting firm has been involved in multiple municipal audits of [Defendants] and avers that it has uncovered a scheme where [Defendants] disconnect[] lines and/or circuits, but continues to bill its customers for these disconnected lines." [*Id.* ¶ 7].

In particular, the City of Morristown maintains that Defendants continued to charge it hundreds of dollars a month for each of the eight circuits even though they had been inactive for years. [*Id.* ¶¶ 9, 11, 13, 15, 17, 19, 21, 23]. According to the City of Morristown, these charges were "encrypted," [*id.* ¶ 44], and "bur[ied]" in "pages upon pages of data" in its billing statements, [*id.* ¶¶ 6, 44]. As a result, the City of Morristown brings this diversity action against Defendants for breach of contract (Count I), unjust enrichment (Count II), negligence (Count III), fraud and intentional misrepresentation (Count IV), and negligent misrepresentation (Count V). Defendants now seek dismissal of Counts III–V, arguing that these claims "are insufficiently pled, suffer from obvious legal defects, and should be dismissed." [Defs.' Mot. to Dismiss at 3].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief." In determining whether to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A pleading that contains allegations of fraud, however, must satisfy a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy this standard, a pleading must contain allegations of "the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (citations omitted). Although Rule 9(b) allows a party to plead intent and knowledge in general terms, conclusory assertions as to these states of mind will not suffice "without reference to [a] factual context." *Iqbal*,

556 U.S. at 686. In other words, the pleading requirements under Rule 8(a)(2) are "still operative" and apply to allegations of intent and knowledge. *Id.* (citation omitted); *see also Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." (citation omitted)). A party therefore may not simply plead "the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 686.

## III. ANALYSIS

Defendants assert that this case "is a simple contract dispute" but that the City of Morristown "attempts to allege tort theories by restating its contract claim in language of tort." [Defs.' Mot. to Dismiss at 2]. In this vein, they argue that the City of Morristown has not alleged an independent legal duty that supports its claim for negligence and has not alleged a misrepresentation of fact that sustains its claims for misrepresentation. [*Id.* at 3].

### A. Negligence

The City of Morristown alleges that Defendants "owed it a duty of care as a service provider to provide reasonable services to the City, including but not limited to disconnecting and removing from its billing the aforementioned circuits." [Am. Compl. ¶ 37]. Defendants, however, contend that this allegation amounts only to a reiteration of the parties' contractual relationship, which, as an arms-length relationship, does not create a duty of care. [Defs.' Mot. to Dismiss at 5]. According to Defendants, "[i]t is black letter law that breach of a contractual duty cannot support a negligence claim." [*Id.* at 4].

A claim for negligence cannot succeed if a defendant does not owe a plaintiff a duty of care. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). "Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. . . . to be determined by reference to the body of statutes, rules, principles, and precedents which make up the law[.]" *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996) (quoting *id.* at 869–70). When a contractual relationship exists between parties, a duty of care can "arise[] out of the circumstances surrounding or attending the transaction," in which case a breach of that duty is a tort and the contract "furnishes the occasion for the tort." *Green v. Moore*, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001) (quotation omitted); *see Thomas & Assocs., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003) ("Conduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract . . . ." (citations omitted)). The survival of the City of Morristown's claim for negligence therefore depends on whether, under Tennessee law, a public utilities provider[2] has a "duty of care . . . to provide reasonable services" to its customers, "including but not limited to disconnecting and removing" those services. [Am. Compl. ¶ 37].

[2] Under Tenn. Code Ann. subsection 65-4-101(6)(A), a "public utility" means "every individual, copartnership, association, corporation, or joint stock company, its lessees, trustees, or receivers, appointed by any court whatsoever, that own, operate, manage or control, within the state, any interurban electric railway, traction company, all other common carriers, express, gas, electric light, heat, power, water, telephone, telegraph, telecommunications services, or any other like system, plant or equipment, affected by and dedicated to the public use, under privileges, franchises, licenses, or agreements, granted by the state or by any political subdivision thereof."

In *Trigg v. Middle Tennessee Electric Membership Corp.*, 533 S.W.2d 730 (Tenn. Ct. App. 1975), plaintiffs William and Ellen Trigg ("the Triggs") entered into a contract with defendant Middle Tennessee Electric Membership Corporation ("Middle Tennessee Electric"), a utilities provider, "whereby the defendant agreed to furnish electricity to the plaintiffs at their residence and the plaintiffs agreed to comply with the cooperative's rules and regulations." *Id.* at 732. A dispute between the parties regarding the payment of a bill prompted Middle Tennessee Electric to disconnect the Triggs' electrical service—an action that it took while the Triggs were away on vacation.[3] *Id.* When the Triggs returned from vacation, they discovered that the food in their refrigerator and freezer had spoiled, drained onto the floor and carpets, and created a "stench and odor of decay." *Id.* at 732 n.1. The icemaker had also flooded the kitchen and dining room. *Id.* The Triggs had to replace or treat all of their furniture because of the odor and flooding. *Id.*

As a result, they sued Middle Tennessee Electric for the damages to their home, and the court held that Middle Tennessee Electric had "acted unreasonably and was negligent in terminating the plaintiffs' service while they were on vacation." *Id.* at 734. In reaching this decision, the court reasoned that public utilities providers enjoy "certain rights and benefits" and "[a] concomitant of these rights and benefits is a duty to use a corresponding degree of care to protect the public." *Id.* Based on this rationale, the court made a broader ruling as well: "We hold that in Tennessee, a public utility, when terminating service to a

[3] The court noted that one of Middle Tennessee Electric's employees, after visiting the house twice, "was able to ascertain that the Triggs were not home." *Trigg*, 533 S.W.2d at 734.

customer, must act reasonably when the discontinuance of the service might present an obvious danger of damage to the property of the customer."[4] *Id.*

The only remaining question is whether *Trigg*'s holding applies when damages are not to property but are purely economic—the type of damages that the City of Morristown pursues here. The answer to this question depends on whether Tennessee law permits parties to recover damages under a theory of negligence without having suffered personal injury or damage to property. In short, it depends on the scope of Tennessee's economic loss rule, "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009) (citation omitted). Although Tennessee's courts have not expressly adopted the economic loss rule, the Tennessee Supreme Court has agreed with the policy behind the rule, *see Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995), and Tennessee's lower courts have also addressed the rule, *see, e.g.*, *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008).

In *United Textile Workers of America v. Lear Siegler Seating Corp.*, 825 S.W.2d 83 (Tenn. Ct. App. 1990), defendant Lear Siegler Seating Corp. ("Lear") operated a factory

---

[4] The court, in support of its holding, cited *Washington Gas Light Co. v. Aetna Casualty & Surety Co.*, 242 A.2d 802 (Md. 1968), a case in which the court observed: "The defendant is a public utility authorized to do business in this state. When its property is devoted to public use, certain reciprocal rights and duties are raised by implication of law between the utility and the public it undertakes to serve. It has a duty to use the highest degree of care to protect the public in rendering service to its customers." *Id.* at 804 (quoting *Kohler v. Kan. Power & Light Co.*, 387 P.2d 149, 151 (Kan. 1963)).

that local authorities closed after a storm had damaged propane tanks on the factory's property and caused them to leak. *Id.* at 83–84. Plaintiff United Textile Workers of America ("United Textile"), a union, sued Lear on behalf of Lear's employees based on a theory of negligence, seeking lost earnings that the employees would have been entitled to if not for the factory's need to close. *Id.* at 84. United Textile argued that Lear owed a duty of care to the employees to take reasonable measures in handling and storing the tanks, to avoid the risk of economic harm to the employees. *Id.* The court ruled against United Textile, refusing to allow the employees to recover "purely economic loss absent physical injury or property damage." *Id.* at 87. In reaching this decision, the court traced the economic loss rule to its origin in the United States Supreme Court's opinion *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), in which "the rule was expressed that liability is not legally recognized for indirect economic damages." *United Textile*, 825 S.W.3d at 84–85.

Tennessee's courts, however, acknowledge that *United Textile*'s holding is confined to cases in which the parties lack privity of contract. *See John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 430 (Tenn. 1991); *Acuity*, 297 S.W.3d at 734. In fact, the economic loss rule does not apply in Tennessee under two scenarios, when: (1) the parties in a case have privity of contract, *see John Martin*, 819 S.W.2d at 430 (describing the economic loss rule as "a general principle that prohibits the recovery of purely economic damages for negligence *when the plaintiff lacks privity of contract with the defendant*" (emphasis added) (citation omitted)); *Acuity*, 297 S.W.3d at 734 (stating that "[t]he economic loss doctrine provides that, *absent privity of contract*, one may not recover in negligence where there is no injury to person or property." (emphasis added) (citing *United Textile*, 825 S.W.2d at

87)); *see generally* Eddward P. Ballinger, Jr. & Samuel A. Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L. J. 491, 494 (2002) (noting that some states treat contractual privity as a requirement for the recovery of economic losses in a negligence action, whereas other states treat it as a bar to recovery (footnote omitted)), and (2) the action for pure economic loss is based on negligent supervision or negligent misrepresentation, *Acuity*, 297 S.W.3d at 734 (citing *John Martin*, 819 S.W.2d at 435).

Because Tennessee's economic loss rule does not bar recovery of economic losses in tort when parties have privity, it does not hamper the City of Morristown's claim for negligence, which includes allegations of privity. [*See* Am. Compl. ¶¶ 5, 36].[5] Based on these allegations, the Court finds no reason to curtail *Trigg*'s holding so that a public utilities provider's duty of care requires reasonable conduct to avoid risks only to a customer's property and not a customer's economic well-being. Indeed, outside of the economic loss rule's domain, a duty of care extends to any type of risk so long as "the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citation omitted). To determine whether the foreseeability and gravity of harm outweigh a defendant's burden to take reasonable protective measures, a court considers several factors:

> [1] the foreseeable probability of the harm or injury occurring; [2] the possible magnitude of the potential harm or injury; [3] the importance or

[5] Defendants concede that this case involves a contractual dispute between the parties. [Defs.' Mot. to Dismiss at 2].

> social value of the activity engaged in by defendant; [4] the usefulness of the conduct to defendant; [5] the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; [7] the relative usefulness of the safer conduct; [8] and the relative safety of alternative conduct.

*Id.* (citation omitted). In assigning a duty of care to public utilities providers when they terminate a customer's service, the court in *Trigg* addressed several of these factors implicitly but addressed the third factor head-on. In doing so, the court, again, noted that public utilities providers "in the state of Tennessee enjoy . . . certain rights and benefits" and "[a] concomitant of these rights and benefits is a duty to use a corresponding degree of care to protect the public." *Trigg*, 533 S.W.2d at 734. When considering the third factor, this Court struggles to imagine that "the importance or social value" of a public utilities provider's function could fluctuate, flowing if it involves the protection of a customer's property but ebbing if it involves the protection of a customer's economic welfare. *McCall*, 913 S.W.2d at 153.

Reversing course to the first factor, the Court notes that the foreseeability of the harm in *Trigg* arose from "the manner in which" the termination of service occurred—conduct that also colors the issues in this case. *Trigg*, 533 S.W.2d at 734. The fact that the City of Morristown's claim for negligence is based on an omission—the termination of service without a cancelation of billing—does not cause the alleged harm to be unforeseeable. *See McWherter v. JACOA Alcoholism Ctr.*, No. W2006-01629-COA-R3-CV, 2007 WL 2155738, at *4 (Tenn. Ct. App. July 27, 2007) (stating that a duty of care arises when a defendant's *omission* creates a foreseeable, unreasonable risk of harm (emphasis added) (citing *McCall*, 913 S.W.2d at 153). The Court emphasizes that it is not commenting on

whether this alleged conduct—the termination of service without a cancelation of billing—involved the exercise of reasonable care or whether the alleged harm is foreseeable. Both of these issues are questions of fact, *see McClung v. Delta Square P'ship*, 937 S.W.2d 891, 900 (Tenn. 1996); *Holt v. Walsh*, 174 S.W.2d 657, 659 (Tenn. 1943), and the Court is unable to consider them on a motion to dismiss, *see, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). Rather, the Court simply concludes that, when not performed in a reasonable manner, the termination of service *can* result in the foreseeable probability of the alleged harm in this case—the overcharges—and therefore must carry with it a duty to act reasonably. Along similar lines, the magnitude of the potential harm or injury under the second factor—based on the allegations, which the Court accepts as true—is several hundred thousand dollars, not a trifling amount. [Am. Compl. ¶ 25]. Under the factors that remain, any burden that Defendants have in disconnecting service in a reasonable manner is no more onerous than the burden that Middle Tennessee Electric, a fellow utilities provider, had in *Trigg*.

As a public utilities provider, Defendants therefore had a duty of care to disconnect the circuits in a reasonable manner, so as to avoid foreseeable harm—even economic harm—to the City of Morristown. The City of Morristown has sufficiently alleged this duty by asserting that Defendants "owed it a duty of care as a service provider to provide reasonable services to the City, including . . . disconnecting and removing from its billing the aforementioned circuits." [*Id.* ¶ 37]. The City of Morristown's claim for negligence

therefore does not warrant dismissal. The Court is careful to note, however, that its ruling here as to Defendants' duty of care does not extend beyond the facts of this case, in which the allegations of contractual privity have played an important role.

**B. Fraud and Intentional Misrepresentation**

As an initial matter, the Court begins by addressing the City of Morristown's dual description of its cause of action under Count IV as one for "fraud and intentional misrepresentation." [*Id.* at 8]. The Tennessee Supreme Court has stated that intentional misrepresentation and fraud "are different names for the same cause of action," and in cases involving these torts, it "suggest[s] that th[e] term [intentional misrepresentation] should be used exclusively." *Hodge v. Craig*, 382 S.W.3d 325, 342–43 (Tenn. 2012) (citations omitted). This Court therefore will treat the cause of action in Count IV as one for intentional misrepresentation.

To plead a plausible claim for intentional misrepresentation, the City of Morristown must allege sufficient facts that show:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Id.* (citation omitted). Defendants argue that the City of Morristown fails to state a claim for intentional misrepresentation because it has not alleged a misrepresentation of fact other than future promises, which cannot—as a matter of law—amount to a misrepresentation.

[Defs.' Mot. to Dismiss at 6–9]. In addition, Defendants claim that the City of Morristown "fails to plausibly allege" fraudulent intent and justifiable reliance. [*Id.* at 9]. They also maintain that the allegations lack particularity under Rule 9(b). [*Id.* at 12–13].

*1. Misrepresentation of Present or Past Fact*

In support of the argument that the City of Morristown has not alleged a misrepresentation of fact, Defendants contend that the City of Morristown "does not identify any fact misrepresented by . . . Defendant[s]" apart from an assertion that its "bills contained improper charges." [*Id.* at 7]. Relying on two federal opinions—each of which is out of circuit and does not involve Tennessee law—Defendants appear to argue, as a matter of law, that an improper charge on a bill cannot be a misrepresentation of fact because it would create an overly broad definition of a misrepresentation. *See Almanza v. United Airlines, Inc.*, No. CV 215-033, 2016 WL 722159, at *12 (S.D. Ga. Feb. 19, 2016) (stating that the inclusion of an improper line-item fee on an airline ticket "would have amounted only to a representation that Defendants assessed this fee as part of the purchase price—a representation that was, in fact, true"); *Braswell Wood Co. v. Waste Away Grp., Inc.*, No. 2:09-CV-891-WKW [WO], 2010 WL 3168125, at *4 (M.D. Ala. Aug. 10, 2010) (concluding that charges that allegedly amounted to double billing were not intentional misrepresentations because "it was entirely true that [the defendant] was levying [charges] in those amounts"). Based on these cases, Defendants conclude that "[t]he appearance of the disputed charges on Plaintiff's bills constitutes only a truthful representation that Plaintiff was, in fact, being assessed with those charges." [Defs.' Mot. to Dismiss at 7].

Defendants mischaracterize the City of Morristown's allegations; the City of Morristown does not allege that the actual charges in its billing statements are misrepresentations but alleges that the misrepresentations are Defendants' assurances that it would no longer be billed for the eight circuits: "[Defendants] fraudulently and intentionally misrepresented to the City that it would be billed only for the services it was actually receiving and that when a line was disconnected, it would also be removed from billing." [Am. Compl. ¶ 44]. Defendants argue, however, that this allegation, which they describe as "an allegation that Defendants failed to honor a future promise," [Defs.' Mot. to Dismiss at 9], is "not actionable in fraud as a matter of law," [*id.* at 8]. *See Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990) (stating that a promise that pertains to future events "does not relate to an existing or past fact"). According to Defendants, this allegation's language—"*would* be billed," "*when* a line was disconnected," and "*would* also be removed from billing"—indicates a conjecture as to future event. [Defs.' Mot. to Dismiss at 8].

Under Tennessee law, "[s]tatements of future intention, opinion, or sales talk are *generally* not actionable because they do not involve representations of material past or present fact." *Power & Tel. Supply*, 447 F.3d at 931 (emphasis added) (citing *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982)). Tennessee's courts, however, have recognized an exception in cases "where justice demands," *Steed Realty v. Oveisi*, 823 S.W.2d 195, 199 (Tenn. Ct. App. 1991) (quotation omitted), an exception that they describe as the doctrine of promissory fraud, *see Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 29 n.1 (Tenn. Ct. App. 1992) (stating that

the Tennessee Supreme Court "has indicated a willingness to apply this doctrine for over a decade"); *Steed Realty*, 823 S.W.2d at 200 (affirming a trial court's application of the doctrine of promissory fraud); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) (noting a "trend towards" the doctrine of promissory fraud). Under this doctrine, a future promise can support a claim for intentional misrepresentation if it "was made with the intent not to perform." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978). An allegation of a misrepresentation therefore must "embody a promise of future action without the present intention to carry out the promise," *Stacks*, 812 S.W.2d at 592 (quotation omitted), though neither a promisor's failure to keep a promise nor a promisee's subjective impression can establish this intent, *Oak Ridge Precision*, 835 S.W.2d at 29 n.2.

Accepting Defendants' argument that the City of Morristown alleges "a promise as to future billing activity," [Defs.' Mot. to Dismiss at 8], the Court must determine whether this alleged future promise is accompanied by "sufficient factual matter" that shows an intent not to perform the promise. *Iqbal*, 556 U.S. at 678. The City of Morristown has pleaded sufficient facts from which the Court is at least able to "draw the reasonable inference" that Defendants did not plan to keep their promise when they made it. *Id.* As part of the allegations against Defendants, the City of Morristown claims that they promised they would cease billing for disconnected services not once or twice or even three

times but on at least four separate occasions,[6] and failed to do so each time. [Am. Compl. ¶¶ 9, 11, 13, 15, 17, 19, 21, 23, 44]. This allegation—combined with the allegations that the charges were "encrypted," were "buried" in "pages upon pages of data," and required the interpretive assistance of a private investigator, [*id.* ¶¶ 6–7, 44]—is enough to support a reasonable inference that Defendants did not intend to keep their promises when they made them, *see Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (recognizing that "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an *inference* that they were knowingly made" (emphasis added) (quotation omitted)).

Even if the City of Morristown had alleged that the charges—and not the promises to discontinue billing for disconnected services—were the misrepresentations, Defendants' pursuit of dismissal would still fail because it invites this Court reach a decision that is far too expansive: that "every incipient billing dispute," as a matter of law, cannot be a misrepresentation. [Defs.' Mot. to Dismiss at 8 (quoting *Braswell Wood*, 2010 WL 3168125 at *4)]. The Court declines to accept this invitation, with not only common sense but also case law in Tennessee counseling against doing so. *See Knox-Tenn Rental Co. v. Jenkins Ins., Inc.*, 755 S.W.2d 33, 34, 40 (Tenn. 1988) (determining that the evidence at trial "clearly show[ed]" fraud, which arose from allegations that the defendant, an

[6] The City of Morristown alleges that it requested the cancellation of one circuit in October 1992, [Am. Compl. ¶ 23], two circuits in July 1996, [*id.* ¶¶ 11, 17], one circuit in July 2000, [*id.* ¶ 19], and four circuits in November 2004, [*id.* ¶¶ 9, 13, 15, 21].

insurance company, had over-billed the plaintiff by hundreds of thousand dollars over many years by "misrepresent[ing] the amount of insurance premiums paid").

As for the contention that the charges in the billing statements are "truthful representation[s]," [Defs.' Mot. to Dismiss at 7], the Court is unable to consider this argument on a motion to dismiss because it requires an improper factual finding—namely that the alleged excess charges are not imbued with an intent to misrepresent, *see Alley v. Quebecor World Kingsport, Inc.*, 182 S.W.3d 300, 303 (Tenn. Ct. App. 2005) ("When a party intentionally misrepresents a material fact . . . . [t]he representation must have been made with knowledge of its falsity and with a fraudulent intent." (quotation omitted)); *cf. Howell v. Colonial Penn Ins. Co.*, 842 F.2d 821, 823 (6th Cir. 1987) (recognizing that, under Tennessee law, the "threshold question of whether a misrepresentation exists" in an insurance application "is a question of fact which should ordinarily be determined by a jury"); *In re AEP ERISA Litg.*, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004) ("Defendants' contention that Plaintiffs fail to allege any material misrepresentations . . . is not persuasive on a motion to dismiss" because "[w]hether the communications constituted misrepresentations . . . [is a] question[] of fact that [is] properly left for trial." (quotation omitted)). The City of Morristown therefore has properly alleged a misrepresentation in support of its claim for intentional misrepresentation.

*2. Intent to Misrepresent*

As an additional argument for dismissal, Defendants maintain that the City of Morristown "fails to plausibly allege fraudulent intent," [Defs.' Motion to Dismiss at 9],

because it pleads facts that are merely "consistent" with fraudulent intent, [*id.* at 10–11 (quoting *Deom v. Walgreen Co.*, 591 F. App'x 313, 320 (6th Cir. 2014) ("When, as here, the context makes the factual allegations at most consistent with both conduct that is actionable and conduct that is not, more is required to 'nudge[] [the] claims across the line from conceivable to plausible.")]. Specifically, Defendants argue "it is *much more likely* this dispute has obvious, non-illegal, explanations—including but not limited to miscommunications regarding four decades' worth of changing service needs that have resulted in a billing disagreement." [*Id.* at 10]. Along these lines, Defendants contend that the City of Morristown "must 'allege more by way of factual content' to establish this billing dispute is not 'more likely explained by' non-fraudulent activity." [*Id.* at 11 (quoting *Iqbal*, 556 U.S. at 680, 683)].

The City of Morristown's allegations are not merely on par with an intent to misrepresent; instead they contain facts that raise a plausible assertion of an intent to misrepresent. The Court begins by deconstructing the Sixth Circuit's decision in *Deom*, a case on which Defendants rely in arguing that the City of Morristown's allegations are at most consistent with intentional misrepresentation. In *Deom*, the Sixth Circuit considered whether the plaintiff, an owner and operator of three pharmacies, pleaded sufficient facts to allege a claim for breach of the implied covenant of good faith and fair dealing. The case involved a dispute that stemmed from a transactional agreement between the plaintiff and the defendant, Walgreen Co. ("Walgreen"). *Deom*, 591 F. App'x at 314. The parties agreed that the plaintiff would sell his inventory and records to Walgreen, which would then pay the plaintiff a bonus if it filled a certain number of prescriptions for his former customers

in the months after the sale. *Id.* When Walgreen failed to fill enough prescriptions to trigger the bonus, the plaintiff sued it for breach of the implied covenant. *Id.* at 314–15. The plaintiff's allegations included assertions that Walgreen had failed to be "adequately prepared" to serve the former customers and provided "substandard customer service," including "unhelpful staff" and "long waiting times." *Id.*

In examining the sufficiency of the plaintiff's allegations, the Sixth Circuit first noted that, under the applicable state law, a breach of the implied covenant requires an improper motive, not just unreasonable behavior. *Id.* at 317–18. The Court therefore reviewed the allegations for a reasonable inference of bad faith, rather than simply poor or negligent judgment. *Id.* at 319. The Court determined that the plaintiff did not plausibly plead that Walgreen acted in bad faith by intentionally mismanaging the pharmacies because the allegations "are equally consistent with conduct taken either 'through negligence or by design' and could be explained by either 'ineptitude or deliberate subversion.'" *Id.* at 320. In reaching this decision, the Court derived its reasoning from a pair of sources: (1) the plaintiff's own admission—both at the trial and appellate levels—that Walgreen's failure to fill the prescriptions could have been the result of negligence or ineptitude and (2) case law. *Id.* at 320–21. The Court relied on precedent in which courts recognize that "when, as here, the seller's and buyer's economic interests are aligned and both stand to profit from attracting and retaining customers, it is facially implausible that a business buyer would intentionally drive off customers." *Id.* at 320 (citations omitted).

The circumstances that led to dismissal in *Deom* are not present in this case. First, the City of Morristown has not directly conceded that Defendants' alleged conduct may be

the result of negligence or ineptitude. Although the City of Morristown pleads a claim for negligence beside its claim for intentional misrepresentation, these concurrent claims are not a direct admission that Defendants' alleged conduct is equally consistent with negligence. Rather, these claims are simply an example of alternative pleading, which is permissible and common under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading . . . . may include relief in the alternative or different types of relief."); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency."). Second, unlike in *Deom*, case law does not render the City of Morristown's claim facially implausible. To the contrary, case law in Tennessee indicates that claims for intentional misrepresentation are plausible when a corporation allegedly overbills a party by hundreds of thousands of dollars over several years. *See Knox-Tenn Rental*, 755 S.W.2d at 34, 40.

Despite the dissimilarities between *Demo* and this case, Defendants propose that this Court should rely on it in determining that the City of Morristown "must 'allege more by way of factual content' to establish this billing dispute is not 'more likely explained by' non-fraudulent activity." [Defs.' Mot. to Dismiss at 11 (quoting *Iqbal*, 556 U.S. at 680, 682)]. In doing so, they invite the Court to embrace the "obvious" explanation that the overcharges were the result of "miscommunications" between the parties. [*Id.* at 10]. This breezy rendition of the allegations, however, is neither obvious nor consistent with them in their full "factual context." *Iqbal*, 556 U.S. at 686. The Court strains to fathom how repetitious "miscommunications" are "*much more likely*" to explain Defendants' failures to carry out a relatively simple request—each and every time it received one. [Defs.' Mot.

to Dismiss at 10]. Instead, the allegations, accepted as true, establish that Defendants participated in a pattern of activity that resulted in the disconnection of services but not a reciprocal cancelation of billing for those services. The allegation that this pattern was intentional, accompanied by a specter akin to fraud, is certainly plausible—particularly in light of the allegation that the City of Morristown had discovered a more widespread pattern of identical conduct involving other municipalities. [*See* Am. Compl. ¶ 7].

*3. Justifiable Reliance*

Defendants go on to argue that the City of Morristown's allegations regarding the element of justifiable reliance suffer from the "same plausibility defect" as the allegations regarding intent. [Defs.' Mot. to Dismiss at 11]. Specifically, they contend that "the complaint forecloses any claim of justifiable reliance because Plaintiff alleges it discovered the purported overcharges through an investigation of its *own* billing statements." [*Id.*]. In other words, they argue that the City of Morristown's reliance on the alleged misrepresentations was not justified because the means for uncovering the misrepresentations—the billing statements—were at all times available to it. [*Id.* at 12]. *See Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 123 (Tenn. Ct. App. 2001) (stating that reliance was not justified because the plaintiff "had the means to obtain the information needed and discover any 'fraud' if he simply asked . . . for a copy of the actual lease agreement"); *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989) ("Generally, a party dealing on equal terms with another is not justified in

relying upon representations where the means of knowledge are readily within his reach." (citation omitted)).

Justifiable reliance "is not blind faith" but "a showing . . . that the representation was relied on . . . and that the reliance was reasonable under the circumstances." *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009) (citation omitted). In determining whether a party is justified in relying on a representation or not justified because "the means of knowledge are readily within his reach," *Solomon*, 774 S.W.2d at 943, Tennessee's courts turn to a "guiding principle":

> [W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness.

*Capital TCP, LLC v. New Horizon Memphis, LLC*, No. 2:07-cv-02157-JPM-dkv, 2010 WL 2734148, at *8 (W.D. Tenn. July 9, 2010) (quoting *Goodall v. Akers*, No. M2008-01608-COA-R3-CV, 2009 WL528784, at *7 (Tenn. Ct. App. Mar. 3, 2009)). The question of whether reliance on a representation is reasonable is one of fact. *Goodall v. Akers*, No. M2010-01584-COA-R3-CV, 2011 WL 721494, at *3 (Tenn. Ct. App. Mar. 1, 2011).

The Court can reasonably infer that the billing statements containing the charges for the eight circuits were available to the City of Morristown. [*See* Am. Compl. ¶ 6]. As a result, to make a plausible assertion of justifiable reliance, the City of Morristown must plead facts from which the Court can also reasonably infer that the "relevant information" in those statements—the overcharges—were not discernible through ordinary diligence. *Goodall*, 2011 WL 721494 at *4; *see Capital TCP*, 2010 WL 27341248 at *8. Construing

the allegations in a light most favorable to the City of Morristown—namely the allegations that the overcharges were "encrypted" and commingled with legitimate charges in "pages upon pages of data," [Am. Compl. ¶¶ 6, 44]—the Court can infer that an ordinary review of the statements would not necessarily reveal a distinction between charges for active circuits versus inactive circuits.[7] The Court can also infer that the City of Morristown's decision to retain a private investigator surely would have been unnecessary—both in terms of trouble and expense—if an ordinary review of or inquiry into the statements would have revealed the overcharges.

One of the most important takeaways from the allegations, accepted as true, is that the City of Morristown, by hiring a private investigator, did not blindly rely on Defendants' representations that billing for the eight circuits would cease but attempted verify that billing had ceased. *See Capital TCP*, 2010 WL 2734148 at *8 (concluding that justifiable reliance did not exist when a counter-plaintiff admitted that "there was no diligence performed inasmuch as [it] trusted [counter-defendants] to provide true and correct information about the occupancy . . . of the apartments"). The question of whether the multi-year gap between the alleged misrepresentation and the hiring of the investigator was reasonable under the circumstances is one of fact, which the Court will not address here on the motion to dismiss. *See Goodall,* 2011 WL 721494 at *3. Even if the Court had found merit in Defendants' argument that the City of Morristown had "the means of knowledge"

[7] Further complicating the billing statements is the allegation that each circuit contained multiple "points" and that the City of Morristown, at least with regard to one of these circuits, had requested disconnection of some points but not others, which remained active and in use. [*See* Am. Compl. ¶ 24].

in its reach, *Solomon*, 774 S.W.2d at 943 (citation omitted), it would still not be convinced that dismissal is proper because the availability of knowledge is only one of many factors that contribute to a determination of justifiable reliance, *see Goodall*, 2011 WL 721494 at *3–4 (stating that "a number of factors [are] relevant to the determination of whether a plaintiff's reliance was reasonable" and listing eight of them). The City of Morristown therefore makes a plausible assertion of justifiable reliance in support of its claim for intentional misrepresentation.

*4. Particularity under Rule 9(b)*

In a final volley for dismissal of the City of Morristown's claim for intentional misrepresentation, Defendants invoke Rule 9(b) to argue that several key assertions are missing from the allegations, including "the particulars of any supposed misrepresentation, such as who made them, when they were made, who allegedly received them or even the basic content of any misrepresentation." [Defs.' Mot. to Dismiss at 12].

"The Sixth Circuit reads this rule liberally" in cases involving common-law intentional misrepresentation, *Coffey*, 2 F.3d at 161–62 (citation omitted), requiring a pleading to include "the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud," *Power & Tel. Supply*, 447 F.3d at 931. "The threshold test is whether the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *Coffey*, 2 F.3d at 162 (quotation omitted). Under this threshold test, the Sixth Circuit has noted that "[w]e

are reluctant to amputate plaintiffs' claim as long as there is a reasonable basis upon which to make out a cause of action from the events narrated in the complaint" and that "[i]f plaintiffs' claims are groundless, that conclusion will emerge as discovery proceeds." *Michaels*, 848 F.2d at 680.

Having already addressed the adequacy of the allegations regarding intent to misrepresent, the Court need only consider whether the City of Morristown has properly pleaded—with the requisite particularity—the time, place, and content of the misrepresentations; the scheme; and injury. The Court, however, is able to give only minimal consideration to Defendants' argument dealing with particularity under Rule 9(b) because it is itself lacking particularity under Local Rule 7.1(b), which requires parties to include in their briefs a "concise statement of the factual . . . grounds which justify the ruling sought from the Court." Defendants' argument is two sentences long. Defendants do not identify any portion of the Complaint—paragraphs, phrases, or words—that is wanting in particularity. The Court is not at liberty to scour the Complaint for defects that come within the wide net that Defendants have cast. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record].").

Even if a paucity of factual support did not plague Defendants' argument, it still is unlikely to succeed because the allegations—based on the Court's review of them to this

point—appear to be sufficiently particular under Rule 9(b). The City of Morristown pleads the precise content of the misrepresentations—Defendants' future promises that "when a line was disconnected, it would also be removed from billing." [Am. Compl. ¶ 44]. It tethers these misrepresentations to particular times by pleading the month and the year of the disconnections for each circuit. [*See id.* ¶¶ 9–23]. It pleads that statements relating to the disconnection of the circuits are present in the records it has on file, which include documentation it received from Defendants. [*Id.* ¶¶ 10, 12, 14, 16].[8] It pleads "a scheme where [Defendants] disconnect[] lines and/or circuits, but continue[] to bill its customers for these disconnected lines." [*Id.* ¶ 7]. Lastly, it pleads the amount of monetary damages—to the cent—from the alleged scheme. [*Id.* ¶ 25].

Again, Defendants fail to explain why these particular allegations do not provide them with "sufficient notice of the misrepresentation" so that they can answer "in an informed way." *Coffey*, 2 F.3d at 162 (quotation omitted). In the absence of this explanation, Defendants' argument under Rule 9(b) is a feeble one at best. Even so, the Court cannot fairly decline to dismiss the claim for intentional misrepresentation without considering one additional aspect of Defendants' argument: the contention that the City of Morristown has not specified which of the two Defendants made the misrepresentations. Indeed, the City of Morristown refers to the two Defendants collectively as "Defendants" throughout the Complaint and attributes the misrepresentations to both of them at once. [Am. Compl. ¶ 44].

[8] The Complaint contains sufficient particularity from which the Court can deduce that the place of the alleged misrepresentations is Morristown, Tennessee. [*See id.* ¶¶ 9–23].

Defendants argue that this practice is not permissible under Rule 9(b), citing *Gilliard v. Reconstruct Co.*, No. 1:11-cv-331, 2012 WL 4442525 (E.D. Tenn. Sept. 25, 2012). In *Gilliard*, the court determined that the plaintiffs' failure to identify which of the seven defendants made the alleged misrepresentations was "a substantial defect" under Rule 9(b). *Id.* at *10. The court, in reaching this decision, relied on the Sixth Circuit's opinion in *United States ex rel. Branham v. Mercy Health System of Southwest Ohio*, No. 98-3127, 1999 WL 618018 (6th Cir. 1999), a qui tam action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733. In *Branham*, a case with five defendants, the Court stated that Rule 9(b) "does not permit a plaintiff to allege fraud 'by indiscriminately grouping all of the individual defendants into one wrongdoing monolith.'" *Id.* at *9 (Clay, J., concurring in part and dissenting in part (quotation omitted)).

Because Defendants have provided the Court with no analysis that bridges the facts in *Gilliard* and *Branham* with the facts in this case, the Court is unconvinced that either of these cases apply in full force here. The *two* Defendants—compared to the five defendants in *Gilliard* and the seven defendants in *Branham*—hardly constitute the sort of "grouping" that resembles a "monolith." *Branham*, 1999 WL 618018 at *9 (Clay, J., concurring in part and dissenting in part (quotation omitted)); *see Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (determining that the plaintiffs failed to plead with particularity under Rule 9(b) because they vaguely attributed misrepresentations to sixteen defendants in the complaint); *see also Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (concluding that the allegations were lacking in particularity under Rule 9(b) because the plaintiffs pleaded several types of misrepresentations and simultaneously ascribed them to more than ten

defendants); *Fondren v. Schmidt*, 626 F. Supp. 892, 898 (D. Nev. 1986) (recognizing that in cases involving multiple defendants, a plaintiff should allege the role of each of them, but also noting that "group conduct may be pleaded" when "a category of defendants is allegedly responsible for a continuing course of conduct" (citation omitted)). In straightforward fashion, the City of Morristown has identified a single type of misrepresentation, not multiple types, in sufficient detail and has attributed that recurring misrepresentation to two specific parties.

When viewing the allegations for consonance with Rule 9(b)'s purpose—to ensure that a defendant has a "reasonable basis" to make out a claim and respond with an informed pleading, *Michaels*, 848 F.2d at 680; *see BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 827 (S.D. Ohio 2012)—the Court is satisfied that the allegations have enough specificity to accomplish that end. To the extent that the alleged misrepresentations are either groundless or attributable to only one of the two Defendants, that conclusion is sure to "emerge as discovery proceeds." *Michaels*, 848 F.2d at 680. In this vein, if the City of Morristown determines during discovery that it is no longer able to plead a factual basis for intentional misrepresentation against both Defendants, the "spectre of Rule 11 sanctions should guide the actions" of its counsel. *Id.* at 681. The Court therefore will not dismiss the City of Morristown's claim for intentional misrepresentation.

**C. Negligent Misrepresentation**

Defendants argue that the City of Morristown fails to state a claim for negligent misrepresentation because the billing statements "are not intended to guide Plaintiff in its

business transactions." [Defs.' Mot. to Dismiss at 13]. Specifically, Defendants contend that the City of Morristown's allegation that the bills contain improper charges is insufficient because it lacks a description of "any information, opinions or statements in the bills that were intended to guide . . . business transactions." [*Id.* at 15].[9] As a result, they maintain the City of Morristown's claim for negligent misrepresentation must fail "as a matter of law." [*Id.*]. Returning to Rule 9(b), Defendants also claim that the allegations of negligent misrepresentation lack particularity. [*Id.* at 15–16].

*1. Faulty Information Meant to Guide Others in Business Transactions*

A plausible claim for negligent misrepresentation requires sufficient facts showing that, among other elements, a defendant has provided (1) false information, (2) for the guidance of others, (3) in a business transaction. *Ritter*, 912 S.W.2d at 131. *Black's Law Dictionary* defines a "business transaction" as "[a]n action that affects the actor's financial or economic interests, including the making of a contract." (10th ed. 2014).

The allegations are sufficient to support a reasonable inference that Defendants provided the billing statements to the City of Morristown to guide it in a business transaction. The City of Morristown alleges that Defendants falsely "represent[ed] what the City's bill would be for certain services," [Am. Compl. ¶ 47], and "bill[ed] the City monthly for these services," [*id.* ¶ 6]. Based on these allegations, the Court can reasonably infer that the billing statements were meant to guide the City of Morristown in submitting

[9] Again, Defendants' argument is off point because the City of Morristown does not allege that the charges themselves are the misrepresentations. Even so, the Court will give Defendants the benefit of the doubt and address their argument as it is.

payments for services—payments that would "affect[] [Defendants'] financial or economic interests." *Business Transaction*, *Black's Law Dictionary*. The Court can also surmise that billing statements between a customer and utilities provider arise from a business relationship and not a personal one.[10] Defendants cite no precedent for their assertion that a billing statement, "as a matter of law," cannot guide a customer in this type of business relationship. [Defs.' Mot. to Dismiss at 15]. The City of Morristown's claim for negligent misrepresentation therefore includes a sufficient allegation that the billing statements were meant to guide it in a business transaction.

*2. Particularity under Rule 9(b)*

Defendants assert that "[t]he same defects requiring dismissal of the fraud claim also require dismissal of [the] negligent misrepresentation claim." [*Id.*]. In particular, they argue that "like the fraud claim, the complaint nowhere sets forth the content of any misrepresentation [of] any past or present material fact by either Defendant." [*Id.*]. Also, they contend that the city of Morristown has not alleged "how or why Defendants purportedly failed to exercise reasonable care in making the unidentified misrepresentations." [*Id.* at 16].

Although Defendants are correct that a claim for negligent misrepresentation requires particularity under Rule 9(b), *see Power & Tel. Supply*, 447 F.3d at 931, the Court has already addressed the sufficiency of the allegations as to the misrepresentations. The

[10] The allegation of a contractual relationship between the parties fortifies the Court's inference that the billing statements were Defendants' way of guiding the City of Morristown to make payments in support of a business transaction. [*Id.* ¶ 5]; *see Business Transaction, Black's Law Dictionary*.

Court need not readdress them here because the particularity requirement for intentional misrepresentation is even more exacting than that for negligent misrepresentation, which does not have a scienter requirement. *Henley v. Labat-Anderson, Inc.*, No. 03A01-9104-CV-126, 1991 WL 120403, at *2 (Tenn. Ct. App. July 9, 1991) ("[A]n action for negligent misrepresentation replaces the scienter requirement in fraudulent misrepresentation with a less stringent reasonable care standard[.]" (citation omitted)). Also, contrary to Defendants' contention, the City of Morristown does allege how and why Defendants did not exercise reasonable care: "[Defendants] owed the City the duty to act as a reasonable service provider and only bill for the services it was providing. In acting as a reasonable service provider, [Defendants] should have . . . not charged for services it knew or should have known it was not providing to the City." [Am. Compl. ¶ 47]. These allegations are sufficiently particular to apprise Defendants of the claim against them and allow them to respond in an informed way. *See Coffey*, 2 F.3d at 162. The Court therefore will not dismiss the City of Morristown's claim for negligent misrepresentation.

## IV. CONCLUSION

The City of Morristown alleges plausible claims for negligence, intentional misrepresentation, and negligent misrepresentation under Tennessee law. The Court therefore will not dismiss Count III, Count IV, or Count V. Defendants' Motion to Dismiss the Amended Complaint [doc. 17] is **DENIED.** Defendants' Motion to Dismiss [doc. 12] is **DENIED as moot**. Defendants **SHALL** serve a responsive pleading within fourteen days from the date of this Order.

**IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge